

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 24, 2017**

_____
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO. 16-30203-SGJ7 | |
| GIGI J. STEINER, § | | |
| § DEBTOR | CHAPTER 7 | |
| § | | |
| § | | |
| MONTREUX FINANCIAL, LLC, § | | |
| PLAINTIFF § | | |
| VS. § | ADVERSARY NO. 16-03053-SGJ | |
| § | | |
| GIGI J. STEINER, § | | |
| DEFENDANT § | | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF JUDGMENT: (A) LIQUIDATING CLAIM OF PLAINTIFF AGAINST DEFENDANT; (B) AWARDING POST-JUDGMENT INTERST AT FEDERAL JUDGMENT RATE AND TAXING COSTS AGAINST DEFENDANT; (C) IMPOSING CONSTRUCTIVE TRUST ON CONVERTED FUNDS OR FUNDS TRACEABLE THERETO; (D) DETERMINING AND DECLARING NON-OWNERSHIP OF DEFENDANT IN MONTREUX; (E) DETERMINING JUDGMENT DEBT TO MONTREUX TO BE NON-DISCHARGEABLE PURSUANT TO SECTION 523(A)(2), (A)(4), AND (A)(6) OF THE BANKRUPTCY CODE; AND (F) DENYING DEFENDANT A DISCHARGE IN BANKRUPTCY PURSUANT TO SECTION 727(A)(4)**

**CAME ON FOR TRIAL** on January 17, 2017, the Complaint for Adjudication of Liability, Objecting to Discharge, to Determine Non-Dischargeability and for

1

Other Relief ("Complaint") filed by Plaintiff, Montreux Financial, LLC ("Plaintiff" or "Montreux"), against Defendant, Gigi J. Steiner ("Defendant" or "Steiner" or "Debtor"). Both parties appeared at trial, along with their counsel. Plaintiff called three witnesses to testify (Mark Gibbons; Rob Moore and James Moore) and submitted 21 documents into evidence and asked the court to take judicial notice of documents in the record of the Defendant's bankruptcy case. Defendant did not testify or introduce any of her own evidence. Based on the evidence, the court finds and concludes as follows:

**I.    The following are Stipulated Facts:**

1.    Montreux is a Texas limited company, and Steiner is a Texas licensed attorney.

2.    The Court has jurisdiction of this matter under 28 U.S.C. §§157 and 1334 and 11 U.S.C. §§523 and 727. This is a core proceeding under 28 U.S.C. §157.

3.    Venue is proper under 28 U.S.C. §1409(a).

4.    Exhibit 1 attached to the Complaint is a true copy of the original.

5.    Exhibit 3 attached to the Complaint is a true copy of the original.

6.    Exhibit 4 attached to the Complaint is a true copy of the original.

7.    Exhibit 5 attached to the Complaint is a true copy of the original.

8.    Mark Gibbons ("Gibbons") arranged for the formation of Montreux to make a loan on an apartment complex in Sherman, Texas. Gibbons asked Steiner to serve as the Manager of Montreux. Steiner was also to serve as legal counsel for Montreux.

9.    Montreux was formed on January 25, 2013 with Steiner named in its Certificate of Formation as its Manager.

10.    Gibbons coordinated the formation of Montreux through the Secretary of State.

11. Steiner's responsibilities as Manager included opening and maintaining a bank account to receive and account for payments made on the apartment loan and to distribute proceeds to investors located in California.

12. Steiner opened up a Commercial Bank Account, No.3244561, at Inwood National Bank in the name of Montreux (the "Account") with Steiner as the only authorized signatory.

13. The loan was consummated on September 26, 2013 and is evidenced by a Real Estate Lien Note payable to Montreux and secured by a first lien Deed of Trust, Security Agreement and Assignment of Rents against the apartment complex and associated property of the borrower.

14. On or about November 4, 2013, the borrower wired the November note payment of $16,900.75 to the Account.  On or about January 7, 2014, the borrower wired the December and January note payments totaling $33,801.50 (2 at $16,900.75) to the Account. These two deposits totaled $50,702.25.

15. Over the course of seven months, September 2013 – March 2014, Steiner withdrew $52,385.68 from the Account by various means, to-wit:

| | |
|---|---|
| "Counter Check to Cash" (3) | $22,000.00 |
| "Counter Check to Gigi Steiner (1) | $ 2,000.00 |
| "Transfer to Checking" (11) | $16,250.00 |
| "Transfer to Savings" (2) | $12,000.00 |
| "ATM Withdrawal" (1) | $    100.00 |
| "Debit – Target" (1) | $      35.68 |
| | $52,385.68 |

16. On or about March 28, 2014, Montreux filed suit against Steiner in *Montreux Financial, LLC v. Gigi J. Steiner and Inwood National Bank*, Cause No. DC-14-03217, 68th District Court, Dallas County, Texas.  Montreux later nonsuited the bank.

16. On November 26, 2014, a Dallas County grand jury indicted Steiner.

17. At Steiner's deposition on January 30, 2015, she produced and claimed as authentic an organizational consent that named her the sole member of Montreux.

18. On May 8, 2015, Steiner filed in the state court proceedings a verified amended answer under oath denying her execution of the organizational consent naming three (3) California residents as members of Montreux.

3

19. The issue of whether Steiner has fiduciary duties to Montreux is a question of law for the Court.

## II. The following are additional Findings of Fact of the court, based on the preponderance of the evidence adduced at trial.

1. In and around January, 2013, James L. Moore, Kathleen L. Moore and the Yeager Family Trust, all California residents (collectively, the "Members"), were requested to make a loan (the "Loan") to Calsherm Partners, LP, a Texas limited partnership that owned and operated an apartment complex in Sherman, Grayson County, Texas ("Calsherm"), to enable Calsherm to replace an existing first lien loan to the Federal Home Loan Mortgage Corporation, dated November 29, 1999, in the original principal amount of $3,300,000.00, and secured by the apartment complex (the "Freddie Mac Loan").

2. The Members agreed to make the Loan by forming a Texas limited liability company into which the Members would make capital contributions in a total sum sufficient to pay off the Freddie Mac Loan and related fees and costs. The Texas limited liability company, as Calsherm's new lender, would hold a note memorializing the Loan as its asset; a deed of trust as its security; and make distributions back to the Members from the loan payments received from Calsherm.

3. The Members desired that a local fiduciary, licensed to practice law in Texas, serve as general counsel and manager of the Texas limited liability company to receive and account for the loan payments, and distribute them to the members, as and when the payments were made.

4. The Members were assisted in their endeavor by Mark L. Gibbons ("Gibbons"), a Texas resident, who also served as a real estate advisor to Calsherm and its partners.

5. Gibbons introduced the Members to Defendant, a Texas licensed attorney, who maintained an office at Gibbons' office suite, as someone who was willing to serve as General Counsel and Manager for the Texas limited liability company and as its General Counsel.

6. Gibbons, on behalf of the Members, explained to Defendant that her duties as General Counsel and Manager of the Texas limited liability company would include opening and maintaining a bank account to receive Calsherm's monthly payments on the Loan; and making three (3) disbursements each month, one to each Member, in the correct proportionate amounts, as distributions of the Loan payments.

7. Gibbons detailed to Defendant that her compensation would consist of one lump sum payment of $5,000.00 at or about the time a title company was engaged to act as escrow agent, close the loan and issue a title insurance policy; plus $300.00 per month ($900.00 per quarter).

4

8.  Defendant agreed to serve as General Counsel and Manager of the Texas limited liability company in accordance with the terms and conditions set by the Members as detailed by Gibbons.

9.  Gibbons arranged for the formation of Plaintiff on January 25, 2013, through the filing by Sherry Hampton of Elite Filing Solutions, LLC in Austin, Texas, as organizer, of a Certificate of Formation (the "Certificate") indicating Defendant would be its sole Manager; Defendant's residence address in Dallas, Texas would be Plaintiff's principal place of business; and, Elite Agent Services, LLC in Austin, Texas would be its Registered Agent.

10.  Defendant authorized and approved the filing of the Certificate, and contemporaneously executed a Unanimous Consent In Lieu of an Organizational Meeting of Managers of Montreux Financial, LLC (the "Organizational Consent") evidencing that the Members are the sole capital contributors and owners of all membership interests in Plaintiff. See Organizational Consent. Plaintiff's Complaint Exhibit 2 and Trial Exhibit 2.

11.  On or about August 30, 2013, in preparation for consummation of the Loan, Defendant opened a Commercial Bank Account, No.3244561, at Inwood National Bank ("Inwood"), in the name of Plaintiff (the "Account"), with Defendant as the only authorized signatory. The initial $5000.00 deposit to the Account was a check drawn on the borrower Calsherm's account and intended as Defendant's fee to close the Loan.

12.  The parties engaged Chapin Title Company ("Chapin Title") in Sherman, Texas as the title company and escrow agent for the Loan.

13.  On or about September 26, 2013, the Members capitalized Plaintiff by three (3) wire transfers (the "Capital Contributions") to Chapin Title as follows:

   a.   James Moore:              $1,000,000.00
   b.   Kathleen Moore:           $1,000,000.00
   c.   Yeager Family Trust:      $  862,298.99

14.  Chapin Title was instructed that the three (3) wire transfers constituting the Members' Capital Contributions were made for the benefit of Plaintiff and were to be used to consummate the Loan, cover Chapin's settlement charges and reimburse Calsherm for expenses incurred in connection with the Loan.

15.  Utilizing the Capital Contributions, the Loan was consummated on September 26, 2013, and is evidenced by a Real Estate Lien Note from Calsherm to Plaintiff secured by a first lien Deed of Trust, Security Agreement and Assignment of Rents against the Calsherm apartment complex and associated property (collectively the "Loan Documents").

16.  On or about September 27, 2013, Chapin Title forwarded the original Loan Documents to "Montreux, Attn: Steiner".

17. On or about November 4, 2013, Calsherm wired the November note payment due under the Loan in the amount of $16,900.75 to the Account at Inwood. On or about January 7, 2014, Calsherm wired the December and January note payments due under the Loan totaling $33,801.50 (2 at $16,900.75 each) to the Account at Inwood. These two (2) deposits totaled $50,702.25.

18. On Friday, February 21, 2014, Gibbons, on behalf of the Members, instructed Defendant to disburse $49,652.25 (the Loan payments less Defendant's quarterly fee of $900.00 and miscellaneous bank service charges) from the Account, payable as follows:

| | | |
|---|---|---|
| a. | James Moore: | $17,256.72 |
| b. | Kathleen Moore: | $17,256.72 |
| c. | Yeager Family Trust: | $15,138.81 |

19. On Monday, February 24, 2014, following a move-out from Gibbons' office, Defendant informed Gibbons that she had transferred the Loan payments from the Account into personal accounts in her name and under her control (the "Converted Funds") for her personal use without any legal justification or excuse, and offered to return $10,000.00 to Plaintiff in exchange for a "complete release" by Plaintiff and its Members.

20. On or about March 20, 2014, the Members executed a Unanimous Consent adopting various resolutions including the removal of Defendant as Plaintiff's sole Manager and General Counsel, the appointment of a new manager with the authority and duty to remove Defendant as signatory on the Account and a change of address of Plaintiff's principal place of business.

21. Over the course of seven (7) months, September 2013 – March 2014, Steiner withdrew $52,385.68 from the Account by various means, to-wit:

| | |
|---|---|
| "Counter Check to Cash" (3) | $22,000.00 |
| "Counter Check to Gigi Steiner" (1) | $ 2,000.00 |
| "Transfer to Checking" (11) | $16,250.00 |
| "Transfer to Savings" (2) | $12,000.00 |
| "ATM Withdrawal" (1) | $    100.00 |
| "Debit – Target" (1) | $      35.68 |
| | $52,385.68 |

22. Other than the $5,000.00 initial fee, Defendant took and converted the money in the Account without the authority, consent or knowledge of the Members and against their will. The quarterly fee of $900.00 that Defendant was to be paid to discharge her duties was never earned by Defendant.

23. On or about March 28, 2014, Plaintiff filed suit in Texas state court against Defendant asserting the state law claims and causes of action/ claims for relief alleged in this proceeding. The case is styled *Montreux Financial, LLC v. Gigi J.*

6

*Steiner and Inwood National Bank*, Cause No. DC-14-03217, 68th District Court, Dallas County, Texas. Inwood was nonsuited as a nominal defendant.

24. On November 26, 2014, a Dallas County grand jury indicted Defendant for 3rd degree felony theft under Tex. Penal C. §31.03 for stealing Plaintiff's money. See Indictment, Plaintiff's Complaint Exhibit 5 and Trial Exhibit 16.

25. On or before January 30, 2015, Defendant created, or secured the creation of, a bogus organizational consent purporting to credit her with a $500 capital contribution to Plaintiff and purporting to make her the sole member/owner of Plaintiff though she never contributed any money or other property, or loaned any money, to Plaintiff and never became a member of or acquired any interest in Plaintiff. See bogus organizational consent, Plaintiff's Complaint Exhibit 6 and Trial Exhibit 17.

26. At Defendant's deposition on January 30, 2015, she produced the bogus organizational consent.

27. Defendant has never had and does not have any membership or other ownership interest in Plaintiff.

28. Defendant falsely declared in her bankruptcy petition, under penalty of perjury, that she lived at 5555 Prescott Avenue, Dallas, Texas 75219, when in fact she did not. Defendant later amended her petition to correct this erroneous address.

29. In her bankruptcy schedules, Defendant falsely declared under penalty of perjury that she owned 100% of Plaintiff, when in fact she owned no interest in Plaintiff.

30. At the §341 meeting on February 10, 2016, Defendant falsely testified under oath that she contributed money to capitalize Plaintiff, when in fact she never contributed anything.

31. The transactions involving Plaintiff and Defendant were not fair and equitable to Plaintiff.

32. Defendant abused the confidence that Plaintiff placed in her as a licensed attorney and former Dallas County assistant district attorney.

33. Defendant failed to act in good faith or exercise honesty toward Plaintiff.

34. Defendant placed her own interests before that of Plaintiff.

35. Defendant used the advantage of her position to gain a benefit for herself at the expense of Plaintiff.

36. Defendant assumed and exercised dominion and control over monies owned by Plaintiff in an unlawful and unauthorized manner to the exclusion of and inconsistent with the ownership rights of Plaintiff.

37. Defendant proximately caused the damages sustained by Plaintiff.

38. Defendant knowingly and fraudulently, in or in connections with her bankruptcy case, made a false oath or account, as contemplated by section 727(a)(4) of the Bankruptcy Code. Defendant's actions and omissions in this regard include, without limitation:

- falsely claiming in her bankruptcy schedules and statement of financial affairs that she is a member and 100% owner of Montreux and falsely claiming Montreux has no value;

- falsely testifying at the §341 meeting that she contributed money to Montreux;

- concealing her theft, embezzlement and conversion of Montreux's money by failing to report the funds she obtained in her statement of financial affairs;

39. The court finds these statements were all made under oath, they were false, and they were material. The court finds, based on the totality of the evidence that the statements were made with reckless indifference to the truth and the requisite intent to deceive.

40. Defendant's liability to Plaintiff constitutes a debt for money obtained from Plaintiff by false pretense, false representation, and/or actual fraud, as contemplated by section §523(a)(2) of the Bankruptcy Code.

41. Defendant's liability to Plaintiff constitutes a debt for fraud or defalcation while acting in a fiduciary capacity as a lawyer and manager for Plaintiff, embezzlement and/or larceny, as contemplated by section 523(a)(4) of the Bankruptcy Code.

42. Defendant's liability to Plaintiff constitutes a debt for willful and malicious injury to Plaintiff, pursuant to section 523(a)(6) of the Bankruptcy Code.

**III.  The following are Conclusions of Law of the Court:**

1. The bankruptcy court has Constitutional authority and the consent of the parties to issue a final judgment in this matter.

2. A relationship of trust and confidence existed between Plaintiff and Defendant because Defendant was Plaintiff's attorney and sole Manager. Plaintiff

justifiably placed trust and confidence in Defendant to act in Plaintiff's best interest. Defendant owed fiduciary duties to Plaintiff.

3. Defendant is liable to Plaintiff for breach of fiduciary duties and Plaintiff is entitled to recover from Defendant:

   a. $5,000.00 for the agreed lump sum fee Defendant was paid by Plaintiff which must be disgorged;

   b. $47,385.68 for the funds Defendant unlawfully withdrew, embezzled, stole, converted and misappropriated from the Account;

   c. Post-judgment interest at the federal judgment rate; and

   d. All costs shall be taxed against the Defendant.

4. Defendant is liable to Plaintiff for conversion and Plaintiff is entitled to recover from Defendant $5,000 plus $47,385.68 for the funds Defendant unlawfully withdrew, embezzled, stole, converted and misappropriated from the Account.

5. Plaintiff is entitled to the imposition of a constructive trust, for the benefit of Plaintiff, upon all withdrawals from and debits to the Account; all deposits, transfers, investments or credits and other property obtained with or traced from any of the funds withdrawn from the Account; and all funds that were on deposit in the Account. Plaintiff is entitled to the issuance of all appropriate writs and processes directing any financial institution or other custodian, person or entity in possession or control of such funds or other property subject to the trust, whether held in Defendant's name, under her control or otherwise subject to the trust, to turn over such funds and other property to Plaintiff.

6. Defendant has never had and does not have any membership or other ownership interest in Plaintiff.

7. Under 11 U.S.C. §727(a)(4), Defendant is not entitled to, and should be denied, a discharge in bankruptcy.

8. Under 11 U.S.C. §523(a)(2), (a)(4) and (a)(6), Defendant's liability to Plaintiff as set forth herein is non-dischargeable.

9. Due to the nature of Defendant's actions, this court finds and concludes that there is clear and convincing evidence of fraud, breach of fiduciary duties, and willful and malicious injuries, and Plaintiff is entitled to exemplary damages in the amount of $201,000, pursuant to the Tex. Civ. Prac. & Rems. Code Section 41.003. Specifically, Plaintiff did not bring any claims under a statute that allows attorney's fees, and none of its claims sound in contract. Accordingly, Plaintiff cannot recover attorney's fees for its claims. However, exemplary damages may be allowed by law, in addition to actual damages, by way punishment, and may also include compensation for inconvenience, reasonable attorney's fees, and other losses too remote to be

9

considered under actual damages. *McDonald v. Bennett,* 674 F.2d 1080, 1093 n.10 (5th Cir. 1982). *See also Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex. 1984) (citing to Allison v. Simmons, 306 S.W.2d 206, 211 (Tex. Civ. App.-Waco 1957, no writ) ("exemplary damages [exist] as an example for the good of the public and to compensate for inconvenience and attorney's fees"); *King v. Acker*, 725 S.W.2d 750, 757 (Tex. App.—Houston [1st Dist.] 1987, no writ).

10.  Section 41.011 of the Tex. Civ. Prac. & Rems. Code requires this court to consider six (6) non-exclusive, evidentiary factors in determining the amount of exemplary damages:  (a) the nature of the wrong; (b) character of the conduct involved; (c) degree of culpability of wrongdoer; (d) situation and sensibilities of the parties concerned; (e) extent to which the conduct offends a public sense of justice and propriety; and (f) net worth of the defendant. The evidence, when analyzed in terms of these factors, warrants an award of exemplary damages. Specifically, the Defendant was a seasoned attorney license in Texas who was recommended for the position of general counsel and sole manager to Plaintiff.  She accepted those positions, opened a bank account for Plaintiff, and had sole signature authority on the account.  She took on the responsibility for receiving monthly installments of $16,900 on Plaintiff's $2.9 million real estate lien note and disbursing the funds to the members of Plaintiff who provided the $2.9 million that Plaintiff loaned out in exchange for the note.  Defendant was the one person in whom Plaintiff's members placed their trust, to stand guard over the money and disburse it to them in due course, as agreed.  Instead of the fidelity she owed them as a trusted lawyer and manager, she stole $53,000 of the $55,000 the borrower paid on the note.  After stealing money to which she was not entitled, Defendant evaded Plaintiff and its members; fabricated a false organizational consent showing Defendant to be the sole owner of Plaintiff, to cast her embezzlement as a lawful distribution, and caused Plaintiff to have to retain civil litigation counsel and also criminal counsel to work with the Dallas District Attorney to pursue criminal charges against Defendant.  Defendant caused Plaintiff to thereafter incur exorbitant attorney's fees with her dilatory tactics in the state court before Defendant eventually filed bankruptcy.  The Defendant thereafter made false statements in her bankruptcy case.  All of this fraud, resistance, defiance and delay puts this case above the norm and into a category warranting exemplary damages. The fact that this court has not heard evidence of the Defendant's current net worth is not fatal to Plaintiff's request for exemplary damages.  Defendant has not been forthcoming with financial information in her bankruptcy paperwork and did not testify at trial.  This court believes, under all the facts and circumstances, that the amount of $201,000-which is the amount that Plaintiff represents it has incurred in reasonable attorney's fees in dealing with the Defendant—is an appropriate amount of exemplary damages.  A fact finder may consider evidence of attorney's fees in assessing exemplary damages and this does not undermine the longstanding primary purpose of exemplary damages, to punish and deter.

**** END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ****